UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LDA

| | | |
|---|---|---|
| CVS/CAREMARK CORPORATION, Plaintiff, | ) | Civil Action No.: CA 07 177 ML |
| v. | ) | |
| CHUBB GROUP OF INSURANCE COMPANIES, Defendant. | ) | |

## COMPLAINT

## INTRODUCTION

CVS/Caremark Corporation f/d/b/a/ CVS Corporation ("CVS" or the "Insured") brings this action against Chubb Group of Insurance Companies, also doing business as Federal Insurance Company ("Chubb"), which executed the commercial umbrella insurance policy under which CVS was insured. CVS seeks a declaratory judgment as to Chubb's responsibilities under the commercial umbrella policy. CVS also seeks damages based on Chubb's wrongful and bad faith failure to indemnify CVS pursuant to the terms of the commercial umbrella policy, in willful breach of Chubb's duties and obligations to CVS under that policy. CVS further seeks compensatory and punitive damages as well as attorneys' fees against Chubb pursuant to R.I.G.L. § 9-1-33.

## PARTIES

1. Plaintiff CVS/Caremark Corporation is a Delaware corporation with its principal place of business in Woonsocket, Rhode Island.

2. Defendant Chubb is, on information and belief, a New Jersey corporation with its principal place of business at 15 Mountain View Road, Warren, New Jersey.

**JURISDICTION AND VENUE**

3. The parties in this case are citizens of different states.

4. The amount in controversy in this case is in excess of $75,000.

5. This Court has diversity jurisdiction over this action pursuant to 28 USC § 1332.

6. This Court also has jurisdiction pursuant to 28 U.S.C. § 2201, because this is an action seeking a Declaratory Judgment and there is an actual controversy between the parties.

7. Chubb has sufficient minimum contacts with the State of Rhode Island to subject it to the jurisdiction of this Court. These minimum contacts include, among others: a) Chubb's continuous and systematic efforts to sell and support insurance within the State of Rhode Island and its engagement, generally, in the business of insurance in the State of Rhode Island; b) Chubb's deliberate sale of insurance to CVS within the State of Rhode Island; and c) Chubb's ongoing communications to CVS in Rhode Island, and its ultimate refusal to pay CVS amounts owed in Rhode Island in accordance with the insurance contract.

8. Venue is proper in this District since many of the witnesses and documents relevant to this case are situated in this District. This is also the District in which CVS was based, both when it sought insurance coverage for the underlying claims from Chubb and when Chubb denied such coverage.

**THE PRIMARY INSURANCE POLICY**

9. On or about December 30, 1999, CVS, through its agent, purchased a commercial general liability insurance policy (policy no. RM GL 612-3282)(hereinafter the "Primary Policy")

from American International Group, Inc. ("AIG"). The effective date of the Primary Policy was from January 1, 2000 until January 1, 2001.

10. The Primary Policy provided for coverage for "Bodily injury... caused by an occurrence that takes place in the coverage territory." The Primary Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

11. The Primary Policy also specifically contained an endorsement pertaining to "Druggists" which provided in part for coverage under the terms of the Primary Policy for "Bodily injury...arising out of the rendering or failure to render, professional services as a pharmacist," and defining such a failure as an "occurrence" under the terms of the Primary Policy.

12. The insurance coverage afforded under the Primary Policy provided limits of liability of $1,750,000 per occurrence, and $5,000,000 in the aggregate, and provided for a Self-Insured Retention ("SIR") of $250,000 per occurrence and a $250,000 deductible per occurrence.

13. By approximately August 8, 2002, the aggregate limit of the Primary Policy had become exhausted by claims made against CVS that were covered by the Primary Policy.

**THE COMMERCIAL UMBRELLA POLICY**

14. On or about December 30, 1999, CVS, through its agent, purchased a commercial umbrella insurance policy (policy no. 7969-05-73)(hereinafter the "Excess Policy") from defendant Chubb. The effective date of the Excess Policy was from January 1, 2000 until January 1, 2001.

15. The Excess Policy provides coverage to CVS in several ways, including by providing a replacement primary layer of insurance coverage in the event that the limits of the underlying Primary Policy have become exhausted.

16. Chubb's Excess Policy identified the AIG Primary Policy as the "underlying insurance" and specifically mentioned the $250,000 SIR from the Primary Policy, but by its terms, it did not expressly incorporate the deductible amount of the Primary Policy as a deductible of the Excess Policy.

## CHUBB'S BREACH OF THE INSURANCE CONTRACT

17. On or about November 26, 2002, CVS, through its agent, notified Chubb that the Primary Policy had been exhausted and that pursuant to its terms, the Excess Policy would now operate as the primary insurance.

18. Following the exhaustion of the Primary Policy, numerous claims have been brought against CVS for which CVS has sought insurance coverage from Chubb under the Excess Policy because the claims have exceeded CVS' $250,000 SIR (the "Post-Exhaustion Claims"). Chubb has breached its contract with CVS by denying CVS its right to be indemnified for the Post-Exhaustion Claims, many of which have been settled between 2002 and 2007.

19. The Post-Exhaustion Claims include the following:

a. Claim No. 00-GL-3074, as to which CVS incurred a total expense of $767,575.32. After CVS' payment of its $250,000 SIR, Chubb was obligated to pay CVS for the loss on this claim pursuant to the terms of the Excess Policy. Chubb, claiming the Primary Policy's deductible was still in effect, did not pay CVS the full amount that was due. Chubb remains obligated to pay CVS $250,000 for this claim;

b. Claim No. 00-GL-4732, as to which CVS incurred a total expense of $779,044.75. After CVS' payment of its $250,000 SIR, Chubb was obligated to pay CVS for the loss on this claim pursuant to the terms of the Excess Policy. Chubb, claiming the Primary Policy's deductible was still in effect, did not pay

CVS the full amount that was due. Chubb remains obligated to pay CVS $250,000 for this claim;

c. Claim No. 01-GL-0146, as to which CVS incurred a total expense of $470,576.15. After CVS' payment of its $250,000 SIR, Chubb is obligated to pay CVS $220,576.15 for the loss on this claim pursuant to the terms of the Excess Policy;

d. Claim No. 01-GL-3912, as to which CVS incurred a total expense of $313,746.26. After CVS' payment of its $250,000 SIR, Chubb is obligated to pay CVS $63,746.26 for the loss on this claim pursuant to the terms of the Excess Policy;

e. Claim No. 01-GL-3573, as to which CVS incurred a total expense of $312,847.69. After CVS' payment of its $250,000 SIR, Chubb is obligated to pay CVS $62,847.69 for the loss on this claim pursuant to the terms of the Excess Policy;

f. Claim No. 00-GL-4756, as to which CVS incurred a total expense of $1,188,733.41. After CVS' payment of its $250,000 SIR, Chubb was obligated to pay CVS for the loss on this claim pursuant to the terms of the Excess Policy. Chubb, claiming the Primary Policy's deductible was still in effect, did not pay CVS the full amount that was due. Chubb remains obligated to pay CVS $250,000 for this claim;

g. Claim No. 01-GL-3096, as to which CVS incurred a total expense of $386,226.58. After CVS' payment of its $250,000 SIR, Chubb is obligated to pay CVS $136,226.58 for the loss on this claim pursuant to the terms of the Excess Policy;

h. Claim No. 01-GL-0502, as to which CVS incurred a total expense of $294,754.56. After CVS' payment of its $250,000 SIR, Chubb is obligated to pay CVS $44,754.56 for the loss on this claim pursuant to the terms of the Excess Policy; and

i. Claim No. 00-GL-3755, as to which CVS incurred a total expense of $326,792.43. After CVS' payment of its $250,000 SIR, Chubb is obligated to pay CVS $76,792.43 for the loss on this claim pursuant to the terms of the Excess Policy.

20. Each of the Post-Exhaustion Claims is covered under the terms of the Excess Policy.

21. CVS materially complied with all of the terms and conditions of the Excess Policy.

22. CVS provided Chubb with timely notice of each of the Post-Exhaustion Claims.

23. In response to being provided notice by CVS as to the outstanding Post-Exhaustion Claims, Chubb has asserted that its obligation to provide coverage does not begin until CVS incurs expenses exceeding $500,000, consisting of the $250,000 SIR and a purported $250,000 deductible.

24. CVS has reserved its rights with Chubb to recover all amounts it has incurred on the underlying claims in excess of its $250,000 SIR up to the $500,000 combined threshold that Chubb has asserted controls under the Excess Policy.

25. Chubb wrongly and in bad faith claims that the $250,000 deductible applicable to the Primary Policy is also applicable to the Excess Policy despite that the aggregate limit of the Primary Policy has been exhausted and despite that the Excess Policy does not state that such deductible applies upon the exhaustion of the aggregate limit of the Primary Policy.

26. Chubb's claims that the Primary Policy's deductible still applied to claims after the exhaustion of the Primary Policy were willful, knowingly wrongful and in bad faith.

27. In addition to the Post-Exhaustion Claims listed in Paragraph 19 above, any additional claims brought against CVS under the Primary Policy in which CVS incurred expenses above the $250,000 SIR would raise the identical issue raised in the enumerated Post-Exhaustion Claims.

**COUNT I**
**DECLARATORY JUDGMENT**

28. CVS restates and incorporates by reference all of the allegations in paragraphs 1 through 27 as if set forth fully herein.

29. Upon the exhaustion of the Primary Policy the Excess Policy becomes CVS' policy of primary insurance for the claims that would have been covered by the Primary Policy prior to its exhaustion.

30. The Excess Policy makes no reference to the applicability of the $250,000 per occurrence deductible contained in the Primary Policy.

31. The omission of any reference to the $250,000 deductible in the Excess Policy renders that deductible inapplicable to the Excess Policy. Had Chubb intended to incorporate a deductible as a feature of the Excess Policy, it could have easily and readily made it an express term of the Excess Policy.

32. Each of the Post-Exhaustion Claims is covered by the Excess Policy.

33. Chubb has claimed that the Primary Policy's $250,000 deductible applies to the Excess Policy and has refused to indemnify CVS for any Post-Exhaustion Claims in an amount less than $500,000.

34. CVS seeks an Order from this Court declaring Chubb's duty to provide CVS with insurance coverage and to thus indemnify CVS under the Excess Policy when the $250,000 Self Insured Retention is exceeded.

**COUNT II**
**BREACH OF CONTRACT**

35. CVS restates and incorporates by reference all of the allegations in paragraphs 1 through 34 as if set forth fully herein.

36. By its actions, as set forth above, Chubb has materially breached its obligations to CVS under the Excess Policy by falsely asserting that the Excess Policy was subject to a $250,000 per occurrence deductible and by refusing to pay portions of certain claims based on that assertion between 2002 and 2007.

37. As set forth above, CVS materially complied with all of the terms and conditions of the Excess Policy.

38. As set forth above, CVS suffered damages as a direct result of Chubb's breach.

**COUNT III**
**BAD FAITH REFUSAL TO PROVIDE INSURANCE COVERAGE**
**(RHODE ISLAND G.L. § 9-1-33)**

39. CVS restates and incorporates by reference all of the allegations in paragraphs 1 through 38 as if set forth fully herein.

40. By its actions, as set forth above, Chubb has materially breached its insurance contract with CVS by failing to indemnify CVS for claims made under the Excess Policy.

41. Chubb has wrongly and in bad faith asserted that the Excess Policy was subject to a $250,000 deductible, which, in fact, is not part of the Excess Policy.

42. Chubb has wrongly and in bad faith refused to provide full coverage for the Post-Exhaustion Claims in violation of Rhode Island G.L. § 9-1-33, and CVS is thus entitled to recover its actual damages, punitive damages and its costs and attorneys fees.

43. As a result of Chubb's breach and refusal to provide coverage under the Excess Policy, CVS has suffered damages.

**DAMAGES**

44. CVS has incurred defense costs and expenses and claim settlement costs of at least $1,354,943.67, which should have been paid by Chubb under the Excess Policy. CVS' damages continue to increase as additional claims covered by the Excess Policy are brought against CVS.

45. CVS has also been forced to incur attorneys' fees and other expenses to enforce its rights to indemnity under the Excess Policy which constitutes further damage to CVS.

WHEREFORE, CVS Corporation requests that this Court grant it the following relief:

1. A Declaration that there is no deductible applicable to claims under the Excess Policy;

2. Award CVS its damages, including its expenses incurred in defending and settling the Post-Exhaustion Claims above the limit of the Self-Insured Retention, any additional compensatory damages, punitive damages, interest, and reasonable attorneys' fees pursuant to the provisions of R.I.G.L. § 9-1-33 or otherwise;

3. Award CVS such other and further relief as the Court deems just and proper.

**REQUEST FOR TRIAL BY JURY**

CVS requests a trial by jury on all claims so triable.

Matthew F. Medeiros (#1856)
LITTLE, MEDEIROS, KINDER,
BULMAN & WHITNEY, P.C.
72 Pine Street
Providence, RI 02903
mfm@lmkbw.com
Tel. (401) 272-8080
Fax. (401) 521-3555

Counsel for:
CVS/CAREMARK CORPORATION

*Of Counsel*

Michael L. Chinitz(BBO#552915)
Richard E. Bowman (BBO#645245)
ROSE, CHINITZ & ROSE
29 Commonwealth Ave.
Boston, MA 02116
Tel. (617) 536-0040
Fax. (617) 536-4400

Date: May 17, 2007